IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

JACQUELINE K. LEE,

                              Plaintiff,                    OPINION AND ORDER

        v.
                                                           17-cv-50-wmc
DAIRYLAND POWER COOPERATIVE,

                              Defendant.

        Plaintiff Jacqueline K. Lee, a former employee of defendant Dairyland Power
Cooperative, alleges several of her co-workers sexually harassed her, creating a hostile
work environment and constituting an unlawful employment practice by Dairyland
under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e–2(a).  More specifically, Lee
asserts Dairyland violated Title VII in two ways:  (1) by failing to remove the alleged
harassers who created a hostile work environment; and (2) by maintaining as her
supervisor and the person responsible for stopping future harassment, someone who had
participated in some of the harassment.  Before the court is defendant's motion for
summary judgment, contending that her claims of harassment are not actionable under
Title VII.  (Dkt. #9.)  Under current Title VII law, the court must agree and will grant
defendant's motion.


                              UNDISPUTED FACTS[1]

        Dairyland Power Cooperative employed Lee as an administrative assistant at the
La Crosse Area Boiling Water Reactor in Genoa, Wisconsin.  On April 2, 2014, Lee

---

[1] For the purpose of deciding the present motion, the court finds the following facts undisputed
and material when viewing in a light most favorable to plaintiff as the non-moving party unless
otherwise noted.

overheard a conversation between Don Egge, her immediate supervisor, another Dairyland employee and a security contractor, discussing their desire for Lee to begin wearing her "spring outfits," comparing Lee to another employee described as "here come the jugs," and discussing another Dairyland employee who they believed was "banging someone." (Def.'s PFOFs (dkt. #11) ¶ 6; Pl.'s Aff. (dkt. #17) ¶ 3.) Later that day, Lee called Mary Lund, Dairyland's Vice President of Human Resources, to complain about the incident. Lund spoke directly to Lee about the incident the next day, and met with Lee at her home on April 4. Soon after, Lund initiated an investigation of the incident in accordance with Dairyland's sexual harassment policy, and placed Lee on paid administrative leave for the duration of the investigation. In an interview with Lund, Egge admitted making inappropriate comments, and Lund concluded the conversation had occurred, including sexually demeaning commentary.

In a meeting with Lund on April 10, 2014, Egge personally apologized to Lee, acknowledged that his words were not appropriate, and promised that it would not happen again. Egge also promised to protect Lee from retaliation and to abstain from further sexual harassment. Following this apology, Dairyland's counsel asked Lee to return to work for Egge the next day. Dissatisfied with Egge's apology and promises, Lee left the building. Lund met with Lee and Lee's counsel on April 14 to ask her again to return to work for Egge, explaining that there were no positions to which Dairyland could transfer Lee and assuring Lee that Dairyland would tolerate no further harassment by Egge or others. Feeling that Dairyland had not adequately remedied the situation, Lee tendered her resignation through her counsel later that day. On the same day, Lund

suspended Egge for two weeks without pay as discipline for the incident and ordered him to attend retraining on Dairyland's sexual harassment policy upon his return.

## OPINION

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. In deciding a motion for summary judgment, the court must view all facts in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Here, plaintiff asserts a claim for sex discrimination under Title VII, based on Dairyland's failure to remedy a hostile work environment by appointing her supervisor Egge as the person in charge of ensuring harassment did not occur again, and by not terminating the participants of the April 2 conversation.[2] To prove sexual harassment under Title VII, a plaintiff must demonstrate that: (1) she experienced unwelcome harassment; (2) the harassment was based on sex; (3) the harassment was so severe or pervasive that it altered the conditions of her employment and created a hostile or abusive environment; and (4) a basis for employer liability exists. *Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 788 (7th Cir. 2007). Dairyland argues it is entitled to

---

[2] The complaint references a Title VII claim for a "hostile work environment" multiple times, but Lee's brief in opposition to the motion for summary judgment adopts Dairyland's framing of the issue as a constructive discharge. Ultimately, this distinction proves immaterial as Lee has failed to meet the lesser standard of "severe or pervasive" discrimination necessary to state a hostile work environment claim. *See Tutman v. WBBM-TV, Inc./CBS, Inc.*, 209 F.3d 1044, 1050 (7th Cir. 2000) ("Working conditions for constructive discharge must be even more egregious than the high standard for hostile work environment").

summary judgment because Lee has failed to put forth sufficient evidence from which a reasonable jury could find that the harassment was severe or pervasive or that there is a basis for employer liability. The court will address two of these requirements -- the severity of the harassment and the basis for employer liability -- either one of which falls far short of a viable Tile VII claim on the facts here.

## I. Severe or Pervasive Harassment

To show severe or pervasive harassment sufficient to create a hostile work environment, the offending conduct must be both subjectively and objectively offensive. *Boumehdi*, 489 F.3d at 788. At least for purposes of summary judgment, defendant does not dispute that Lee felt subjectively offended by the April 2 comments. To determine whether harassment is objectively offensive, courts must consider "the frequency of the conduct; its severity; whether it was physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfered with the alleged victim's work performance." *Id.* at 788 (citing *Hostetler v. Quality Dining, Inc.*, 218 F.3d 798, 806–07 (7th Cir. 2000)). Under current law, "'occasional vulgar banter, tinged with sexual innuendo of coarse or boorish workers' generally does not create a work environment that a reasonable person would find intolerable." *Id.* at 788 (quoting *Baskerville v. Culligan Int'l Co.*, 50 F.3d 428, 430 (7th Cir. 1995)).

While crude and objectionable, the harassment Lee endured is not sufficient to meet this "severe or pervasive" standard. In particular, Lee has offered evidence of an isolated incident at Dairyland, which objectively did not make the workplace so intolerable that it altered the conditions of her employment. Moreover, although Lee

avers to complaining to Egge about previous harassment by her coworkers, Lee only reports complaining to Lund (or anyone else in Dairyland's Human Resources department) about this single incident, also indicating a lack of pervasiveness.[3]  Indeed, the Seventh Circuit's treatment of harassment claims strongly suggests verbal harassment limited to a one-time incident that was overheard, rather than intentionally inflicted, does not rise to the severe or pervasive standard under Title VII.  *See Rogers v. City of Chi.*, 320 F.3d 748, 753 (7th Cir. 2003) (four sexually charged comments over several months did not create a hostile work environment); *Patt v. Family Health Sys.*, 280 F.3d 749, 754 (7th Cir. 2002) (eight gender-based comments over a three-year period too isolated and sporadic to constitute a hostile work environment); *Baskerville*, 50 F.3d at 431 (nine gender-based comments over a seven-month period did not create a hostile work environment).

Even so, a single incident can give rise to an actionable Title VII claim if the incident was extraordinarily severe.  *See EEOC v. Mgmt. Hosp. of Racine, Inc.*, 666 F.3d 422, 433 (7th Cir. 2012).  The facts here, however, are readily distinguishable from other isolated acts held to be severe enough to constitute actionable harassment.  *See Mgmt. Hosp. of Racine, Inc.*, 666 F.3d at 432 (supervisor severely harassed an employee when he

---

[3] While Lee alludes to experiencing "repeated[]" gender-based comments about her appearance from other co-workers, this vague assertion has little weight in response to defendant's summary judgment motion without specific facts detailing the frequency or content of this misconduct.  *See Ezell v. Potter*, 400 F.3d 1041, 1048 (7th Cir. 2005) ("[Plaintiff] testified by affidavit that [his supervisor] made [discriminatory] remarks on a regular basis . . . [Plaintiff] provides no detail on the regularity and so we cannot consider the few comments detailed in the briefs to be pervasive."); s*ee also Hamzah v. Woodman's Food Mkt., Inc.*, No. 13-cv-491-wmc, 2016 U.S. Dist. LEXIS 7518, at *16 n.6 (W.D. Wis. Jan. 22, 2016) (plaintiff's failure to plead facts as proof of asserted harassment prevented consideration of that harassment in the court's analysis of pervasiveness).

stated he wanted to "fuck her," she was "kinky" and liked "rough sex," and physically groped her buttocks); *Smith v. Sheahan*, 189 F.3d 529, 534 (7th Cir. 1999) (single incident of injuring employee's wrist due to her gender constituted severe harassment); *Lapka v. Chertoff*, 517 F.3d 974, 983 (7th Cir. 2008) (sexual assault constitutes severe harassment). Absent verbal harassment tied to physical violence or verbal threats of physical violence, direct solicitation of sex is the only harassment this court can identify that the Seventh Circuit has held as sufficiently severe on a *singular* basis to state an actionable Title VII claim. *See Quantock v. Shared Mktg. Servs.*, 312 F.3d 899, 904 (7th Cir. 2002). While wholly inappropriate, particularly when a supervisor is a participant and the boisterous discussion can be overheard from inside a women's locker room, the comments at issue here were not directed at plaintiff, much less include either a threat of physical violence, nor solicitation of sex. Whether the bar should be that high to sustain a Title VII claim is to date not open to debate in the Seventh Circuit.

In *Hostetler v. Quality Dining, Inc.*, the Seventh Circuit expressly analyzed severity by placing the subject act on a continuum of conduct. The court considered physical harassment, where "intimate or more crude physical acts -- a hand on the thigh, a kiss on the lips, a pinch of the buttocks" could constitute severe harassment when frequent in occurrence, but not in isolation. 218 F.3d at 808. If the same spectrum applies to verbal harassment, the offensive comments here fall in a similar place on the spectrum as borderline -- but ultimately non-severe -- harassment the court finds not actionable in *Hostetler*. The conversation here was undoubtedly crude due to its sexual and individualized nature; and if a frequent occurrence, a reasonable jury could believe

Dairyland fostered a hostile work environment that altered the conditions of Lee's employment; but this court is precluded from using Title VII to enforce a "general civility code" in the Dairyland workplace. *Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75, 81 (1998). As such, the court is compelled to hold that a reasonable jury could *not* find that the comments arose to severe or pervasive harassment.

## II. Employer Liability

Even if the harassment Lee experienced met the "severe or pervasive" standard, there is no basis to hold her employer Dairyland liable for this harassment. Under Title VII, an employer may be held liable for harassment of an employee by the employee's supervisor. *Faragher v. City of Boca Raton*, 524 U.S. 775, 807; *Burlington Indus. v. Ellerth*, 524 U.S. 742, 765. If no tangible, adverse employment action results from the harassment, however, the employer can avoid liability if: (1) the employer took reasonable care to prevent and promptly correct the offending behavior; and (2) the employee unreasonably failed to take advantage of corrective opportunities provided by the employer. *Faragher*, 524 U.S. at 807; *Ellerth*, 524 U.S. at 765.

Dairyland meets the prefatory condition to raise the *Faragher-Ellerth* defense, as the record does not indicate Lee suffered any official or tangible employment action from Egge. *See Ellerth*, 524 U.S. at 762 ("A tangible employment decision requires an official act of the enterprise, a company act. The decision in most cases is documented in official company records, and may be subject to review by higher level supervisors."). The only tangible employment action Lee suffered was her resignation. In cases where a constructive discharge stems from an official act of a supervisor, a constructive discharge

*is* a tangible employment action resulting in strict liability. *See McPherson v. City of Waukegan*, 379 F.3d 430, 439 (7th Cir. 2004). However, a constructive discharge absent an official act is not a tangible employment action foreclosing availability of the *Farragher-Ellerth* defense. *See Pa. State Police v. Suders*, 542 U.S. 129, 148–49 (2004) (official acts leading to constructive discharge put "beyond question" whether an employee is disadvantaged by a supervisor and foreclosed from the *Farragher-Ellerth* defense); *Jackson v. Cty. of Racine*, 474 F.3d 493, 501 (7th Cir. 2007) (same). Again, Lee offers no evidence of any official act on either Egge or Dairyland's part, opening the door to Dairyland raising this affirmative defense.[4]

Here, Dairyland meets both prongs of the *Faragher-Ellerth* affirmative defense. First, Dairyland took reasonable care to prevent harassment by promulgating a sexual harassment policy. (Lund Aff., Ex. 3 (dkt. #12-3).) Second, when it learned that harassment had occurred, Dairyland initiated an investigation pursuant to that policy and instituted discipline reasonably calculated to end the harassment.

Citing *Tutman v. WBBM-TV, Inc./CBS, Inc.*, 209 F.3d 1044 (7th Cir. 2000), and *Saxton v. Am. Tel. & Tel. Co.*, 10 F.3d 526 (7th Cir. 1993), however, Lee also argues Dairyland's failure to transfer her or remove Egge from his supervisory position was an insufficient remedy to address her concern about the work environment. The Seventh Circuit in *Tutman* stated "the question is not whether the punishment was proportionate to [the] offense but whether [the employer] responded with appropriate remedial action

---

[4] Again, Lee fails to show a constructive discharge because she has failed to meet the lesser standard of "severe or pervasive" harassment necessary to state a hostile work environment claim. *See Tutman*, 209 F.3d at 1050.

reasonably likely under the circumstances to prevent the conduct from recurring." 209 F.3d at 1049 (citing *Saxton*, 10 F.3d at 535). This reasoning deflates Lee's argument, since she offers no connection between Egge's reappointment as her supervisor and an increased probability of further harassment.

Moreover, no reasonable jury could find Dairyland failed to take reasonably sufficient action to end further harassment. First, Lund immediately responded to Lee's complaint, swiftly initiating an investigation of the April 2 conversation. (Def.'s PFOFs (dkt. #11) ¶¶ 9–17.) Second, Lund brought both Lee and Egge into a meeting with Dairyland's counsel, during which Egge apologized for his conduct. (*Id.* at ¶ 23.) Third, Egge promised not to harass Lee any further and to protect her from any retaliation. (*Id.* at ¶¶ 28, 31.) Fourth, Lund contacted the human resources departments of the contractor who participated in the conversation and requested the offending employees receive discipline and counselling on harassment prevention. (*Id.* at ¶ 38.) Fifth, Dairyland disciplined Egge with a two-week unpaid suspension, demonstrating Dairyland would punish further harassment. (*Id.* at ¶ 37.) Dairyland's prompt action indicates that it took the reasonable steps needed to resolve the problematic work environment, or at least, no reasonable jury could find otherwise.

The *Tutman* court did consider whether the employer's action to separate the harasser and the employee from one another in its consideration of whether the employer in that case took "appropriate remedial action." 209 F.3d at 1049. Separation can be a sufficient remedial action, but is not necessarily. Egge's attitude distinguishes this case from *Tutman*, where the harasser refused to apologize or attend a disciplinary sensitivity

training. *Id.* However uncomfortable Lee may have been with Egge continuing as her supervisor, she offers no evidence that she had reason to believe Egge was insincere or that might have been cause for Dairyland to act. Indeed, Lee does not even offer proof as to the size and skill levels at Dairyland, much less that a reassignment was a viable option.[5]

Ultimately, all Dairyland must show is that its remedial actions would likely end the offensive conduct. In *Tutman*, the employee could reasonably believe the harasser would continue harassment if they were not separated. Egge's apology and promises to prevent further harassment following this single incident show Dairyland took meaningful steps to remedy the work environment. Additionally, despite Dairyland's action to remedy the work environment, Lee failed to take advantage of the corrective opportunities afforded by Dairyland. As such, even if the sex discrimination Lee experienced was severe or pervasive enough to be actionable, Dairyland's actions and Lee's response foreclose any liability.

---

[5] Although not actionable, another obvious "fix" would have been to make explicit what seems to be implicit in this record: that going forward, plaintiff was always free to complain to Lund or someone else in the HR department, who would be responsible for ensuring compliance with Dairyland's policies.

ORDER

IT IS ORDERED that:

1) Dairyland Power Cooperative's motion for summary judgment (dkt # 9) is GRANTED.

2) The clerk of court is directed to enter judgment in defendant's favor and close this case.

Entered this 20th day of March, 2018.

BY THE COURT:

/s/
_____
WILLIAM M. CONLEY
District Judge